UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRAHIM BOUMAKH,**<br><br>          Plaintiff,<br><br>          v.<br><br>**SANDRA JALDIN** *et al.*,<br><br>          Defendants. | Case No. 1:25-cv-1031 (TNM) |

**MEMORANDUM OPINION**

Brahim Boumakh tried to rent an apartment from Sandra Jaldin. Compl. ¶¶ 3–6, ECF No. 1. In his telling, Boumakh signed lease forms, but Jaldin then took the lease back to stop him from occupying the rental unit, and Jaldin's daughter assaulted him. *Id.* ¶¶ 10–11. He sued Jaldin and her daughter over that breach of contract and for injuries resulting from the assault. *Id.* ¶¶ 18–20.

This Court, however, lacks subject matter jurisdiction to address Boumakh's claims. Because he failed to adequately allege complete diversity between parties or federal question jurisdiction, the Court will dismiss his Complaint.

**I.**

Boumakh, proceeding pro se, brings this lawsuit following a leasing process gone awry. As alleged, Boumakh visited an apartment he was interested in renting in April 2025. *Id.* ¶¶ 3–6. Jaldin owned the apartment. *Id.* ¶ 4. Before meeting, Boumakh and Jaldin negotiated and agreed to the lease's terms on the phone. *Id.* ¶¶ 4–6. The pair agreed to meet at Jaldin's Washington, D.C., residence to "finalize the paperwork and hand over the keys in person." *Id.* ¶ 7. But the handoff did not go according to plan. After meeting and signing the lease, Boumakh alleges that

Jaldin "forcibly seized the lease agreement from his hand by twisting his arm" and then fled the scene. *Id.* ¶ 10. Boumakh adds that Jaldin's daughter also assaulted him, "seizing him by the neck, throwing him to the ground, and mounting his back." *Id.* ¶ 11.

A day later, Boumakh filed this lawsuit and brought three claims against Jaldin and her daughter: (1) breach of contract, (2) tortious interference, and (3) assault and battery. *Id.* ¶¶ 18–20. Boumakh also requests an "emergency injunction" ordering Jaldin to "enforce the lease agreement," and enjoining her from "further interfering with [Boumakh's] tenancy or contractual rights." *Id.* ¶¶ 23–27, 37–39. More, Boumakh seeks the following damages: $100,000 for emotional distress and compensatory damages, $250,000 in punitive damages, $50,000 for consequential damages, and $75,000 in special damages for "medical expenses, pain and suffering" and injuries. *Id.* ¶¶ 45–46, 49–50, 53–54, 56–57. On top of that, Boumakh wants $25,000 "for legal fees and costs associated with the litigation." *Id.* ¶¶ 59–60.

Defendants move to dismiss Boumakh's Complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See* Mot. Dismiss, ECF No. 5-1. That motion is now ripe.[1]

## II.

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction. Federal district courts possess limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

---

[1] Boumakh filed a smattering of other motions including a separate motion for an emergency injunction, ECF No. 7, and a motion for leave to file a sur-reply, ECF No. 12. None of those arguments bear on the jurisdictional question at hand. Because the Court grants the motion to dismiss, it denies the motion for an emergency injunction as moot. It denies leave to file the sur-reply because the sur-reply merely rehashes arguments Boumakh already made regarding subject matter jurisdiction, *see* Mot. for Leave to File Sur-reply, at 2, 6–7, ECF No. 12, takes on merits argument the Court does not address, *see id.* at 3–5, or requests various forms of unwarranted relief, *see id.* at 5, 9–11 (requesting subpoenas, appointment of counsel, and a transfer of the case to the Supreme Court of Virginia).

377 (1994).  To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims.  *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *Hertz Corp. v. Friend*, 559 U.S. 77, 96, 130 (2010) ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it.").

That said, the Court must construe a pro se complaint liberally, keeping in mind that complaints filed by pro se litigants are held to a less stringent standard than formal pleadings drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But even pro se litigants must meet the minimum pleading standards required by the Federal Rules and the Constitution.  *See Yellen v. U.S. Bank, Nat'l Ass'n*, 301 F. Supp. 3d 43, 47 (D.D.C. 2018).  That includes rules for alleging subject matter jurisdiction.  *Stoller v. United States*, 216 F. Supp. 3d 171, 174 (D.D.C. 2016); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009).

Boumakh's Complaint invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332.  For the Court to have diversity jurisdiction, Boumakh must not share citizenship with either defendant.  28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff.") (emphasis in original).

Each party's citizenship derives from his or her domicile.  *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569–70 (2004).  And a domicile, in turn, refers to "physical presence in a state, and intent to remain there for an unspecified or indefinite period of time."  *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984).  In determining whether diversity jurisdiction exists, the Court may consider "such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  *See Scolaro*

*v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### III.

By those lights, no diversity jurisdiction exists.  Start with the Complaint's jurisdictional statement.  There, Boumakh merely asserts that this matter "involves citizens of different states" without any elaboration.  Compl. ¶ 14.  The Court does not assume the truth of legal conclusions like this one.  *See Saline Parents v. Garland*, 88 F.4th 298, 303 (D.C. Cir. 2023).  He never requests jurisdictional discovery, and the Court declines to grant it sua sponte.  The remainder of Boumakh's pleadings do not see him through.

Turning first to Boumakh himself, his Complaint indicates that he is a Virginia citizen. He introduces himself as a "resident of the United States" and later provides Arlington, Virginia, as his home address.  *Id.* ¶¶ 2, 64.  His actions also reflect an intent to remain there.  He applied for this lease while "seeking housing within the same school district for his children."  *Id.* ¶¶ 3, 6.

As for the defendants, Boumakh makes no express allegation about either's citizenship. He makes a few references to Jaldin's connections to *both* Washington, D.C., and Bolivia, and says even less about her daughter, the second defendant.  For instance, Boumakh acknowledges that he met Jaldin "at her residence" in Washington, D.C., *id.* ¶¶ 7, 10, and notes that a "building concierge" thought her daughter "liv[ed] there," Pl.'s Opp'n ¶ 10.  He also served the defendants at a D.C. address.  *See* Affidavit of Service, ECF No. 4.  At the same time, Boumakh claims that Jaldin either has already or plans to abscond to Bolivia to evade legal consequences.  *See* Compl. ¶¶ 8, 27 (discussing Jaldin's imminent travel to Bolivia, which raise "concerns over potential evasions of legal responsibility"); Pl.'s Opp'n ¶ 22 (alleging Jaldin "lives now in Bolivia" yet

4

comes to the United States a "few months a year").  Already, these scattered, somewhat conflicting, pleadings hinder Boumakh from meeting his "burden of pleading the citizenship of each and every party."  *Novak v. Cap. Mgmt. & Dev. Corp.*, 452 F.3d 902, 906 (D.C. Cir. 2006) (cleaned up); *Roseberry-Andrews v. Wynne*, 503 F. Supp. 2d 339, 341 (D.D.C. 2007) ("The plaintiff must establish jurisdiction by a preponderance of the evidence.").

Making matters worse for Boumakh, Jaldin established that she is also a Virginia citizen through her sworn declaration.  Recall that a "court may look beyond the pleadings to resolve disputed jurisdictional facts when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1)."  *Tootle v. Sec'y of Navy*, 446 F.3d 167, 174 (D.C. Cir. 2006).  As Jaldin's affidavit explains, she has owned a home in Alexandria since 1996, holds a Virginia driver's license that does not expire until 2028, and she has filed tax returns in Virginia for the past two decades, including for the most recent year, and she owns the Virginia condominium that Boumakh wanted to lease.  Mot. Dismiss at 4; Def.'s Ex. 1 at ¶¶ 3–6, ECF No. 5-2.  She adds that wherever she travels, and for however long, she always returns to her Virginia home.  *Id.*  Boumakh never disputes any of those facts in his Complaint or Reply.  These "indicia of domiciliary status," then, tilt toward a Virginia domicile.  *See Lopes v. Jetsetdc, LLC*, 4 F. Supp. 3d 238, 241 (D.D.C. 2014).

That remains true even if Boumakh alleges that he met Jaldin at her Washington, D.C., residence.  Compl. ¶ 7; Pl.'s Opp'n ¶ 12 (noting the dispute occurred "at the lobby of [Jaldin's] residential building" in "Washington DC").  Alleging "*residence* alone is insufficient to establish the *citizenship* necessary for diversity jurisdiction."  *Novak*, 452 at 906 (emphasis in original).  Courts find as much even for pro se litigants.

It also remains true even if Jaldin travels to Bolivia or stays there for lengthy periods as Boumakh alleges. *See* Compl. ¶ 8 (discussing Jaldin's imminent travel to Bolivia); Pl.'s Opp'n ¶ 22 (alleging Jaldin "lives now in Bolivia" yet comes to the United States a "few months a year"). Indeed, long-term travel to-and-from Bolivia aligns with Jaldin's affidavit. Jaldin acknowledged that she "travel[s]" around the world, but always "return[s] to [her] home" in Virginia no matter "how long [she] stay[s]." Def.'s Ex. 1 at ¶ 3. "Mere absence from a fixed home, however long continued, cannot work the change" in domicile. *Stallforth v. Helvering*, 77 F.2d 548, 550 (D.C. Cir. 1935). Boumakh has not met his burden.

More, Boumakh provides no allegations about the citizenship of Jaldin's daughter. That deficiency is alone fatal to Boumakh's Complaint. As "the party seeking the exercise of diversity jurisdiction," he "bears the burden of pleading the citizenship of *each and every* party to the action." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir. 1983) (emphasis added). By omitting allegations about a defendant's citizenship, Boumakh has failed to meet his burden of showing complete diversity.

Boumakh's other option for subject matter jurisdiction—federal question jurisdiction— also does not do the trick. Boumakh mentioned federal question jurisdiction only in cursory fashion in his Reply. Pl.'s Opp'n at 3. Nothing else about his pleadings suggests that federal question jurisdiction applies, either. For a federal court to exercise federal question jurisdiction, "a federal question" must be "presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Boumakh brought only tort law claims, none of which raise federal issues.

## IV.

Because the Court lacks subject matter jurisdiction over this case, it will dismiss the Complaint without prejudice.  A separate Order will issue.


Dated: January 9, 2026                              TREVOR N. McFADDEN, U.S.D.J.